UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-20340-CMA

THE LAMBERT LAW FIRM P.C., and
GEORGE LAMBERT,

    Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, Pa., and
GAVIN CURLEY,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC"), and Gavin Curley ("Curley"), hereby move to dismiss Counts II, VI, VII, and VIII of the Amended Complaint filed by Plaintiffs, George Lambert and The Lambert Law Firm, P.C. (collectively, "Plaintiffs").[1]  This is Plaintiffs' second attempt to state a claim.  Once again, they seek to transform a straightforward billing dispute into a multi-count complex lawsuit. At bottom, Plaintiffs—an attorney and his law firm—have filed this action to obtain payment for two invoices they submitted in the Fall of 2024. They do not allege that NUFIC has denied those invoices. Nor do they dispute that NUFIC previously paid multiple invoices for more than a year of their work. Instead, Plaintiffs now challenge NUFIC's reliance on representations from the insured's counsel that the invoices had not been approved—and attempt to repackage that reliance into broader tort

---

[1] The filing of this partial motion to dismiss extends the time for Defendants to file a response to any portion of the complaint not subject to the motion to dismiss.  *See, e.g.*, *Berenson v. John Hancock Life Ins. Co.*, 2023 WL 4763179 (S.D. Fla. 2023) (collecting cases).

81236986;1

and equitable claims. Plaintiffs assert eight causes of action—ranging from equitable accounting to fraud.  Four of these counts must be dismissed because they do not, and cannot, state a cause of action.

## FACTUAL ALLEGATIONS

The NUFIC policy (attached as Exhibit 7 to the Amended Complaint) is an excess insurance policy that provides for a maximum of $5 million in coverage in excess of $20 million in underlying insurance.  Plaintiffs—Mr. Lambert and his law firm—allege they were retained to represent an individual insured in multiple criminal and civil proceedings beginning in August 2020, while an underlying RSUI policy was purportedly in effect. *See* Am. Compl. ¶¶ 16–18. The earliest mention of NUFIC's involvement as the final-layer carrier appears in connection with the insured's ongoing legal representation in 2023. *Id*. ¶ 26. Plaintiffs do not allege the existence of any separate written agreement between themselves and NUFIC.

According to the Amended Complaint, Plaintiffs were paid for their legal work under the policy through July 2024.  *Id*. ¶ 46. They allege that in September and October 2024, they submitted two invoices—Invoice 128 for August 2024 services and costs, and Invoice 129 for September 2024—each of which had been signed and approved by the insured. *Id*. ¶¶ 48–59. Plaintiffs claim that, despite this approval, NUFIC failed to timely pay and made various purportedly misleading statements to delay litigation, including suggestions to set up ACH payments. Id. ¶¶ 61–63. Plaintiffs also allege that NUFIC and its purported "agent," Gavin Curley, knowingly misrepresented or concealed information about the invoices and the client's non-approval, even though written approval had supposedly been transmitted. *Id*. ¶¶ 65–76. Plaintiffs assert that NUFIC has since refused to pay and thereby "abandoned the insureds" in active litigation, including high-stakes federal criminal and civil cases. Id. ¶¶ 85–88. But the same

allegations show that NUFIC acted at the direction of the insured and its counsel—who explicitly stated the invoices were *not* approved—making this, at most, a billing dispute; not a basis for sweeping tort and equitable claims.

Based upon these allegations, Plaintiffs attempt to assert eight causes of action: (1) breach of contract; (2) breach of good faith and fair dealing; (3) breach of implied contract; (4) promissory estoppel; (5) quantum meruit; (6) declaratory relief; (7) equitable accounting; and (8) fraudulent misrepresentation.  As explained below, Counts II, VI, VII, and VIII must be dismissed.

## ARGUMENT

### I. COUNT II FOR BREACH OF GOOD FAITH AND FAIR DEALING COVENANT FAILS AS A MATTER OF LAW

In the original version of the complaint, Plaintiffs asserted a cause of action for insurance bad faith.  This Court dismissed that cause of action because it was premature, given that such a bad faith claim cannot be asserted until the underlying contract action has been resolved.  *See* ECF No. 25 at pp. 5-6.  Count II of the Amended Complaint is indistinguishable from the statutory bad faith theory Plaintiffs had originally asserted.  The claim is barred under settled Florida law, which does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing in the insurance context. Instead, such allegations must be brought, if at all, under Florida's statutory bad faith framework, and only after the underlying coverage dispute is resolved.

In *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, the Florida Supreme Court held that first-party bad faith claims for breach of the implied warranty of good faith and fair dealing "are actually statutory bad faith claims that must be brought under section 624.155 of the Florida Statutes." 94 So. 3d 541, 549 (Fla. 2012). The Court emphasized that such claims are not independently actionable because the duty of good faith and fair dealing is a component of the statutory remedy. *Id*. at 548-49. The Eleventh Circuit and Southern District have followed suit.

3

*See QBE Ins. Corp. v. Dome Condo. Ass'n, Inc.*, 577 F. Supp. 2d 1256, 1261 (S.D. Fla. 2008) ("Dome cannot state a cause of action for breach of the implied covenant of good faith and fair dealing because no such cause of action exists under Florida law…Count III…should be dismissed."); *Wood v. Progressive Select Ins. Co.*, 2022 WL 19300687, at *2 (S.D. Fla. 2022) ("Under Florida law, there is no common law action for breach of the implied warranty of good faith; rather, those actions 'are actually statutory bad-faith claims.'") (citations omitted).

Count II recites the same set of facts as Plaintiffs' breach of contract claim and is based entirely on alleged misconduct in NUFIC's handling of payment under the policy. Plaintiffs allege that NUFIC "made it appear as though the payment was being processed" (Am. Compl. ¶ 141), then "reneged and dishonored their obligation to pay" (¶ 142), "misled Lambert into continuing legal work" (¶ 145), and now owe payment under Invoices 128 and 129 (¶ 146). The basis of their allegations is that NUFIC purportedly acted unfairly, in bad faith, and failed to process the claim promptly or transparently.

As the court in *Torres v. GEICO Gen. Ins. Co., Inc*. explained, when a plaintiff's allegations center on an insurer's failure "to handle her claim fairly and honestly and with due regard for her interests," and allege an "overall failure to act 'fairly,' 'honestly,' 'in good faith,' 'with complete candor,' and 'within a reasonable time,'" such allegations are "simply claims for bad faith." 2013 WL 12084492, at *1–2 (S.D. Fla. 2013). There, too, the plaintiff attempted to plead around the statutory scheme by invoking breach of contract and fiduciary duty, but the court rejected that effort, holding that such claims are subsumed into the bad faith claim. *Id*.

Even if Count II were construed as a statutory bad faith claim under section 624.155, it must be dismissed as premature. This Court has already addressed this issue in its April 8, 2025 Order, ruling: "Because Plaintiffs' breach-of-contract claim remains pending, the question of

4

coverage is unresolved — and the bad-faith claim cannot yet be adjudicated." *See* ECF No. 25 at pp. 5-6. Plaintiffs argued that the D&O policy at issue required special treatment, but the Court expressly rejected that argument, holding: "Florida law draws no distinction between policy types when assessing the ripeness of a bad-faith claim." *Id*. The Court aligned itself with "a majority of federal district courts in Florida" and dismissed the original bad faith count as premature. *Id*. (quoting *Terenzio v. LM Gen. Ins. Co.*, 423 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019)).

Count II of the Amended Complaint is no different in substance from the claim this Court has already dismissed. Because Florida law does not permit it as a common law cause of action, and because it would be premature even if properly pled under § 624.155, Count II should be dismissed.

## II. COUNT VI FOR DECLARATORY JUDGMENT FAILS BECAUSE IT IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND SEEKS RETROSPECTIVE RELIEF

Plaintiffs' declaratory judgment claim is improper because it rests on the same underlying dispute as their breach of contract claim and seeks no distinct or prospective relief. Courts in this District have consistently held that where a party pleads a breach claim that will resolve the issues raised in a declaratory count, the declaratory action must be dismissed.

In *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, the court dismissed a duplicative declaratory count, explaining that "a court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim." 2012 WL 1416428, at *2 (S.D. Fla. 2012). Similarly, in *Southshore Hosp. Mgmt., LLC v. Indep. Specialty Ins. Co., Inc.*, the court dismissed a declaratory judgment count where the plaintiff sought a declaration that the insurer owed coverage for the same claim alleged in the breach count. The court held that the declaratory

claim was "entirely duplicative," and noted that the plaintiff "offer[ed] no reason to think its request for declaratory judgment [was] distinct from its breach of contract claim." 582 F. Supp. 3d 1222, 1229 (M.D. Fla. 2022). *See also S.G. Assocs. of Miami v. Western World Ins. Co.*, 2021 WL 4502304, at *1 (S.D. Fla. 2021) (collecting cases dismissing duplicative declaratory judgment causes of action).

The same flaw is fatal here. Plaintiffs allege in Count I that NUFIC breached the insurance policy by failing to pay two invoices that the insured had approved. (Am. Compl. ¶¶ 127–130.) Plaintiffs also allege they relied on false assurances from NUFIC and incurred unpaid costs. (¶¶ 131–133.) That is the full basis of their breach of contract claim. (¶¶ 111–135.)

In Count VI, Plaintiffs reframe the same theory as a request for declaratory relief—asking the Court to "adjudge" that certain prior payments to third-party attorneys were improper, and to reallocate those funds to Plaintiffs. (¶¶ 197–202.) But that request does not involve any present uncertainty in the parties' rights. The declaration Plaintiffs seek is retrospective and entirely tied to the damages already alleged in the contract count.

Where, as here, "the breach of contract claim[] … more effectively resolve[s] the issues at stake," the declaratory judgment count "serve[s] no useful purpose." *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1375–76 (S.D. Fla. 2019) (quoting *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-947, 2009 WL 10671130, at *5 (M.D. Fla. 2009)).

This principle is particularly well established in the insurance context. In *Tamiami Condo. Warehouse Plaza Ass'n v. Markel Am. Ins. Co.*, the court dismissed a declaratory judgment count that asked whether the insurer breached the policy by failing to pay the total amount of damages claimed—holding that this issue "will necessarily be resolved upon adjudication of the breach of

6

81236986;1

contract count." 2019 WL 4863378, at *3 (S.D. Fla. 2019). Likewise, in *Vior Funeral Homes, Inc. v. Hartford Fire Ins. Co.*, the court found that the plaintiff's declaratory claim was "subsumed within its breach of contract claim" because both involved "the same factual dispute." 2017 WL 5953289, at *2 (S.D. Fla. 2017).

As one court put it: "Declaratory judgment claims may properly coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim. Such claims for declaratory judgment must be forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1322–23 (S.D. Fla. 2021). Count VI is not forward-looking. It seeks a declaration about past expenditures solely to support a claim for payment already encompassed in Count I.

Because Count VI presents no separate controversy and would be resolved entirely through the breach of contract claim, it should be dismissed with prejudice.

### III.   COUNT VII FOR EQUITABLE ACCOUNTING FAILS AS A MATTER OF LAW

Count VII for equitable accounting should be dismissed because it fails to meet the stringent requirements for this extraordinary form of relief. Under Florida law, equitable accounting is available only where legal remedies are inadequate and where the claim involves either a fiduciary relationship or complex transactions—none of which are present here. *Bedoyan v. Samra*, 352 So. 3d 361, 365 (Fla. 3d DCA 2022) ("To state a claim for an equitable accounting, [the plaintiff] had to allege that a fiduciary relationship or a complex transaction existed, and second, that a remedy at law would be inadequate").

7

Plaintiffs assert a breach of contract claim in Count I covering the same subject matter: a straightforward dispute over unpaid legal bills. That claim provides a complete mechanism to obtain discovery and recover damages, rendering the equitable accounting claim duplicative and improper. *See id.* at 365, n. 5 (Fla. 3d DCA 2022) ("[A]n equitable accounting cannot coexist with a breach of contract claim covering the same subject matter"); *see also RLI Ins. Co. v. Florida Beauty Express, Inc.,* 2022 WL 19264235, at *2 (S.D. Fla. 2022) (dismissing claim for equitable accounting and holding that "where a party [has] the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate").

Moreover, Plaintiffs allege a straightforward contractual relationship for legal services. The Amended Complaint lacks allegations suggesting a fiduciary duty or complex transactions that would justify equitable jurisdiction. *See e.g., Managed Care Sols., Inc. v. Essent Healthcare, Inc.,* 694 F. Supp. 2d 1275, 1280 (S.D. Fla. 2010) ("[Plaintiff's] conclusory allegation that the accounts at issue are 'extensive and complicated' cannot trump the factual allegations indicating that a calculation of damages in this action is not a complicated endeavor"); *see also Optimus MSO II Inc. v. Simply Healthcare Plans, Inc.*, 2020 WL 6047486, at *6 (S.D. Fla. 2020) (dismissing claim where "Plaintiff [did] not make clear why an equitable accounting [was] necessary given its ability to calculate damages").

Equity does not extend to routine commercial disputes concerning a contractual relationship merely because a party prefers an alternate theory of recovery. *See e.g., J.S. Betts Co. v. S. Georgia Ry. Co*., 67 So. 861, 861 (Fla. 1915) ("Where the legal remedies for a breach of a contract are ample, the basis for equitable relief should be otherwise shown"); *Wright v. Waste Pro USA, Inc*., 69 F.4th 1332, 1340 (11th Cir. 2023) ("Equity's reach is quite modest when adequate legal remedies are available") (citations omitted). In fact, in Count VII of the original

version of the complaint, Plaintiff attempted to assert a cause of action for breach of fiduciary duty. This Court dismissed that cause of action because under the circumstances of this matter there is no fiduciary relationship, See ECF No. 25 at pp. 11-13. As a result, Plaintiff cannot assert the existence of a fiduciary duty as the basis for a claim for equitable accounting.

Simply put, Plaintiffs have a legal remedy and no equitable right. That ends the inquiry. Count VII should be dismissed with prejudice.

.

## IV. COUNTS VIII MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD FRAUD WITH PARTICULARITY

This is Plaintiffs' second attempt to plead a fraud claim. Yet even with the benefit of the Court's prior ruling, the Amended Complaint still fails to meet Rule 9(b)'s threshold for pleading fraud claims with particularity. Plaintiffs simply repackage their grievance over delayed payment into a fraud theory the Court has already rejected.

As the Court previously emphasized, to satisfy Rule 9(b), a plaintiff must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." See ECF No. 25 at p. 9 (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)). Failure to meet that standard mandates dismissal. *See Corsello v. Lincare*, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005).

Plaintiffs again fall short. They reference vague statements about payments "being processed" (Am. Compl. ¶¶ 141, 215) and Curley's alleged invitation to "open an ACH account" (*id*. ¶ 212), but never allege with particularity the content of any actionable misstatement, when

9

and how it was made, or how it induced reliance. They generically assert that "Curley and NUFIC made statements that reneged and dishonored their obligation to pay" (*id.* ¶ 216), without tethering those assertions to specific, false statements made with fraudulent intent.

In Paragraph 65, Plaintiffs selectively quote a November 6, 2024 email from Curley to suggest he falsely downplayed the need for "authority" to process invoices. But the very next paragraph of that same email—which Plaintiffs omit—undermines any inference of deception. Curley wrote:

> Moreover, in a further email today to both of us (also attached), Mr. Lambert inquires about payment he is seeking for his law firm's invoice numbers 128 to 129. Given your comments that Mr. Kontilai has asked that those invoices not be paid, we will advise Mr. Lambert to direct any inquiries to you about payments of the $4,000 he purportedly advanced as well as with respect to payment of his invoice numbers 128 and 129.

(Ex. A). This is not fraud—it is an express acknowledgment that Curley was relaying the insured's position and deferring the issue to the insured's counsel. Because Plaintiffs themselves rely on this email in their Complaint, the Court may properly consider the full communication, not just Plaintiffs' cherry-picked excerpt. *See West v. Q.E.P. Co. Inc.*, 2024 WL 4579772, at *3 (S.D. Fla. 2024) (allowing consideration of the full email chain because it was "central to Plaintiff's Complaint and is expressly referenced in the Complaint"); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (document may be considered on a motion to dismiss if it is central to the plaintiff's claim and its authenticity is not challenged).

Separately, in Paragraph 70, Plaintiffs quote a December 12, 2024 email in which Curley allegedly wrote that the insured "has not yet approved your invoice number 128," and assert that this statement was false. But Plaintiffs elsewhere acknowledge they had already sent NUFIC a copy of the insured's purported signed approval months earlier, and "do not claim to have been

10

deceived," meaning there is no plausible theory of inducement or reliance. *See* ECF No. 25 at p. 9.

Even if the Court were to entertain this strand of the fraud claim, a contemporaneous e-mail from the insured's counsel—sent to Curley that same day—confirms that Curley's statement accurately reflected what he had been told. Insured's counsel, Mr. Feldman, wrote: "I have let Mr. Lambert know that the client has not yet approved the invoice, and hope to have both of them discuss the matter together to resolve." (Ex. B).[2]

Because Plaintiffs' fraud theory is neither new nor pled with the specificity required under Rule 9(b)—and because the record materials they selectively quote do not support their theory—Count VIII should be dismissed with prejudice

**WHEREFORE**, NUFIC and Curley respectfully request entry of an order dismissing the Counts II, VI, VII and VIII in the Amended Complaint, and for any further relief that the Court deems appropriate.

---

[2] While not quoted in the Amended Complaint, this email provides contemporaneous context to the challenged statement in Paragraph 70. This Court has allowed introduction of written communications where they clarify or rebut allegations in the pleading. *See Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1279 (S.D. Fla. 2021) (Altonaga, J.) ("By providing the text message, Plaintiff successfully rebuts Defendants' sole argument in their Motion that paragraph 17's allegation does not indicate Tansey's statements were 'in writing.'").

81236986;1

Respectfully submitted,

**AKERMAN LLP**
*Attorneys for Defendants, NUFIC and Curley*
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

By: s/ Gary J. Guzzi
GARY J. GUZZI
Florida Bar No. 159440
Primary E-mail: gary.guzzi@akerman.com
Secondary E-mail: maria.revoredo@akerman.com
NIKOLAS L. VOLOSIN
Florida Bar No. 1031169
Primary e-mail: nikolas.volosin@akerman.com
Secondary e-mail: dorothy.matheis@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF this 6th day of May, 2025 on:

George Lambert, Esq.
Attorney for The Lambert Law Firm and pro se
THE LAMBERT LAW FIRM
421 Poinciana Drive, #1422
Sunny Isles Beach, FL 33160
Primary Email: office.law.323@gmail.com

s/ Gary J. Guzzi
Attorney