**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:25-cv-20340-CMA**

THE LAMBERT LAW FIRM P.C., and
GEORGE LAMBERT,

      Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, Pa., and
GAVIN CURLEY,

      Defendants.
_____/

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC") and Gavin Curley ("Curley") (collectively, "Defendants") hereby move for summary judgment, as follows.

### <u>INTRODUCTION & BACKGROUND</u>

Defendants are entitled to summary judgment in their favor because the contract and quasi-contract claims brought by Plaintiffs, The Lambert Law Firm and George Lambert (collectively, "Lambert"), fail as a matter of law. Lambert has no contract with NUFIC, no promise from NUFIC, and no basis in law or equity to recover from NUFIC. While Lambert might have a cause of action against his client for his unpaid legal services invoices, he cannot sue NUFIC under any theory as a substitute for seeking payment from his own client.

The record is not murky. As shown in Defendants' Statement of Material Facts ("SMF"), NUFIC issued an insurance policy under which Lambert is not an insured and not a party. Lambert

1

83347400;1

is the attorney that NUFIC's insured, Mykalai Kontilai ("MK"), retained to represent him in civil and criminal litigation brought against him by the U.S. Government.  Lambert's only connection to the NUFIC policy is that he incidentally benefitted from the NUFIC policy because it afforded the insured with the means to pay for some of his defense invoices, up to the limits of the policy, including some of the prior invoices submitted by Lambert.  As explained herein, Lambert simply has no legal right to attempt to sue NUFIC in an effort to collect his clients' unpaid bills.

NUFIC did exactly what the Policy required – it paid covered defense costs that the insured had incurred until such time that the policy limits were exhausted.  In doing so, as it deemed appropriate, NUFIC requested confirmation of the insured's approval of the defense invoices and provided deference to the insured's preferences as to which invoices to be paid, given that the policy limits would be exhausted and the insured might then be personally responsible for the defense invoices.  NUFIC paid in excess of $2 million of Lambert's invoices, and during the course of its payment of the defense invoices, NUFIC repeatedly advised Lambert that "NUFIC is not in privity with you."

This reality defeats every theory Lambert advances. Count I (Breach of Contract) fails because there was never an express contract between Lambert and NUFIC nor a breach of any agreement. Count II (Implied Contract) fails because no implied contract arises where the insurer consistently disclaimed privity. Count IV (Promissory Estoppel) fails because administrative steps like ACH enrollment are not clear and definite promises. Count V (Quantum Meruit) fails because Lambert's services benefited MK, not NUFIC. Simply put, the law rejects each of these claims because Lambert's potential remedy is against his client, not against Defendants.

2

83347400;1

**ARGUMENT**

I.   **ALL OF LAMBERT'S CLAIMS FAIL BECAUSE AN ATTORNEY MAY NOT SUE A CLIENT'S INSURANCE CARRIER FOR NON-PAYMENT OF INVOICES**

At its core, Lambert's lawsuit is nothing more than an effort to get NUFIC to pay invoices for legal services that he performed for his client and which are owed to him by his client. While his client was insured under the NUFIC policy and was entitled to certain benefits under the policy, including the payment of covered defense costs, Lambert is not entitled to any such benefits. The law is clear that an attorney cannot sue his client's insurance carrier to obtain the payment of legal bills.

A number of courts across the country, including in Florida[1], have addressed this issue, and have uniformly held that an attorney may not sue an insurer directly for fees incurred representing the insured. *See, e.g. Continental Cas. Co. v. Marx*, 480 So. 2d 177 (Fla. 3rd DCA 1985); *Brooks Cushman v. Continental Cas. Co.*, 213 F. Supp. 3d 917 (E.D. Mich. 2016); *Old Republic Ins. Co. v. Sidley & Austin,* 702 F. Supp. 207, 211 (N.D. Ill. 1988); *Simmons v. USF&G Co.,* 405 A.2d 675 (Conn. Sup. Ct., App. Session 1978); *Kelly, Walker & Liles v. McFarling,* 509 S.W.2d 659 (Tex. Ct. App. 1974).

In *Marx,* an attorney defended corporate officials, who were insured under Continental's D&O policy. After the attorney did not collect for his services from the insured, the attorney sued Continental directly to recover for the value of the legal services provided to the insured, and was awarded $160,000 by the trial court under a quantum meruit theory. On appeal, however, the

---

[1] While the laws of other states potentially could apply, including Nevada (where one of the insured's criminal cases was pending, where the policy was issued and where the Named Entity listed on the policy's declarations page is incorporated and headquartered), New York (where NUFIC and the insureds' insurance broker are located), or New Jersey (where Curley is domiciled), Lambert chose to sue in Florida where Lambert has one of his law offices, and Florida law does not appear to differ from those other states.

judgment was reversed. The appellate court emphatically stated that "there is *utterly no cognizable legal basis* upon which [the attorney's] recovery against Continental can be sustained." *Id.* at 178 (emphasis added). The court rejected the attorney's argument that he was a third-party beneficiary of the policy, which obligated Continental to pay for the insured corporate officials' legal expenses. The attorney was not a third-party beneficiary because it was "perfectly apparent that [the attorney] derived only the most attenuated 'incidental or consequential benefit from [the] enforcement' of the policy and therefore may not maintain an action upon it." *Id.*

The court stated: "No court has ever held - indeed the proposition seems never before even to have been advanced - that the lawyer may himself sue upon an insurance policy *or any other agreement* which obliges one contracting party to pay the other's legal fees. We shall not be the first." *Id.* at 178-79 (emphasis added).

The court in *Marx* similarly rejected the attorney's attempt to recover under an "implied contract" theory, reasoning that because the attorney was "hired by and represented only the [insureds] and was indeed an antagonist of the carrier in his attempts to secure coverage and a settlement of the underlying case, it is clear that no such agreement existed." *Id.* at 179. *See also Brooks*, *Sidley & Austin,* 702 F. Supp. at 211 (following *Marx* and holding that attorney who represented insured under D&O policy was not third-party beneficiary of policy); *Brooks*, 213 F. Supp. 3d at 920-28 (following *Marx* and *Sidley* in rejecting attorney's claims).

This case law forecloses all of Lambert's efforts to seek recovery from Defendants. Regardless of how Lambert may phrase his purported cause of action (express contract, implied contract, *quantum meruit* or promissory estoppel), he simply has no avenue of recovery from NUFIC, his client's insurer, or from Curley, NUFIC's outside counsel.

83347400;1

## II. LAMBERT'S CLAIM FOR BREACH OF CONTRACT (COUNT I) FAILS AS A MATTER OF LAW

As set forth above, under no theory of law can Lambert recover directly against Defendants, as an attorney may not sue his client's insurer in the context present in this lawsuit. Even when specifically analyzed under each separate theory of recovery, the result remains the same.

With respect to the breach of express contract claim (Count I), Lambert's theory is as simple as it is flawed: he attempts to convert an insurer's advancement of defense costs for its insured into a bilateral contract with the insured's attorney. Florida law (nor the law of any other state) does not permit such a claim. No express contract between Lambert and NUFIC was ever formed. Lambert is not an intended third-party beneficiary of the NUFIC policy. And NUFIC did not assume any supposed promises by RSUI (an insurer that preceded NUFIC in the insurance tower) or other predecessor insurers. Even if a contract could somehow be inferred, the undisputed record shows no breach: NUFIC advanced and allocated defense costs at the insured's request and within the limits of the policy, which policy limits have been exhausted.

### A. Lambert is not an intended third-party beneficiary of the NUFIC policy

It is somewhat unclear what is the exact basis for Lambert's claim for breach of contract. The allegations of the operative complaint focus on what appears to be some type of contract, separate and apart from the policy itself, that was formed between Lambert and NUFIC and which NUFIC allegedly breached. In his deposition testimony, however, Lambert repeatedly refers to the "master contract" (which is the policy itself), and then a "subcontract" between NUFIC and Lambert (and between the prior carriers and Lambert). *See* Lambert Deposition at pp. 50-59.

To the extent Lambert is claiming he has the right to sue for a breach of the policy itself, such a claim fails. Lambert is not a party to the insurance policy, and therefore cannot sue for breach of the policy on that basis. *See, e.g.*, *Cibran Enters., Inc. v. BP Products, N. Am.*, 365 F.

83347400;1

Supp. 2d 1241, 1251 (S. D. Fla. 2005) ("It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach"); *Halmos v. Spinard*, 2023 WL 2975020, *7 (S.D. Fla. 2023) (same). If Lambert is trying to sue as a third-party beneficiary, that argument fails. A non-party may sue on a contract only if, at formation, the contracting parties clearly and primarily intended to directly benefit the non-party. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005); *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006). In the D&O context, *Marx* squarely holds that the insured's lawyer is not an intended beneficiary of the policy; at most, the lawyer receives an incidental benefit when the carrier advances costs for the insured's benefit. *See* 480 So. 2d at 178–79. Lambert cannot point to any policy text naming him, no contemporaneous mutual intent by National Union and MK to primarily benefit him, and no other evidence filling that gap. Any such theory therefore fails as a matter of law.

## B.    No express contract exists between Lambert and NUFIC

Turning to what likely is Lambert's main argument in support of his breach of contract claim, Lambert appears to be arguing that Lambert and NUFIC entered into a separate contract between themselves regarding Lambert's representation of MK. Such an argument fails as a matter of law. The elements of a contract under Florida law are well settled: there must be an offer, acceptance, consideration, and sufficient specification of essential terms. *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). None of these elements are present here.

There simply is no written agreement between Lambert and NUFIC that sets forth the alleged terms of any such contract. While an insured, the insured's defense counsel, and the insured's carrier can create a separate contract in certain circumstances, *see Yale Galanter, P.A. v.*

6

83347400;1

*Johnson*, 2008 WL 11401752, at *2 (S.D. Fla. Jan. 31, 2008), *aff'd*, 293 F. App'x 750 (11th Cir. 2008)[2], there is no such separate contract between NUFIC and Lambert.  Instead, Lambert repeatedly points to his dealings with RSUI when MK initially retained Lambert as one of his attorneys, including some lengthy, detailed communications regarding the terms of Lambert's legal services.  *See* Statement of Material Facts ("SMF"), ECF No. 57, at ¶¶ 5-8.  Regardless of the legal effect of those communications, they are irrelevant because Lambert is suing ***NUFIC***, not RSUI.  What Lambert has failed to establish are the purported offer, acceptance, consideration, and sufficient specification of essential terms of any contract between Lambert and NUFIC.  Lambert cannot do so because those elements simply do not exist, as there was never any contract between Lambert and NUFIC.

The undisputed facts show that NUFIC was administering its insurance policy, not that it had entered into and was performing a separate contract between NUFIC and Lambert.  MK's coverage counsel, David Feldman, confirmed that he had authority to relay MK's review and approval of invoices on MK's behalf, and NUFIC relied on Feldman to communicate MK's reviews and approvals (SMF ¶¶ 12-13). Throughout the claim process, Curley repeatedly sought Feldman's confirmation before NUFIC processed Lambert's invoices (SMF ¶¶ 12-13, 19-24).  Over the course of Lambert's engagement, NUFIC paid invoices Feldman confirmed were approved by MK, totaling more than $2 million (SMF ¶¶ 11).

---

[2] The letter that the *Galanter* court determined constituted a separate, independent contract between the carrier and the attorney was signed by the insured, the attorney, and the carrier; explicitly stated that an agreement was being reached to modify the policy's requirement that only a panel counsel can be retained to represent the insured; and in exchange for that modification of the policy requirement, set forth a large number of specific conditions with which the insured and the attorney would need to agree as part of the consideration for the creation of the separate contract that modified the insurance policy.

The invoices at issue in this matter followed the same pattern.  Lambert submitted Invoice 128 for $105,191.34 in September 2024 and Invoice 129 for $94,325.98 in October 2024 (SMF ¶¶ 16). On November 25, 2024, Feldman said "the client has approved" Invoice 128, only to instruct the next day that it "not be processed" until MK had reviewed the work (SMF ¶¶ 19-20). On December 5, Curley flagged the inconsistency and sought clarification (SMF ¶ 21). On December 12, Feldman separately confirmed that MK had not approved Invoice 128 or any other invoices and had authorized payment for other counsel instead (SMF ¶¶ 23). Feldman repeated this to Lambert directly (*id.*).  In the face of dwindling policy limits, Feldman advised NUFIC as to MK's desired allocation of the remaining policy funds, which never included the payment of either of Lambert's two invoices. Throughout, NUFIC consistently reserved rights under the Policy and attempted to protect MK's interests by allocating the dwindling policy limits as requested by MK. (SMF ¶¶ 17-24).

On these facts, Lambert cannot identify any objective offer by NUFIC to retain him and any acceptance by Lambert of such an offer (or vice-versa), or any promise by NUFIC to pay Lambert other than what may be available for covered defense costs under the policy's available limits. Florida courts have rejected precisely this type of claim. In *Continental Cas. Co. v. Marx*, 480 So. 2d 177, 178–79 (Fla. 3d DCA 1985), the court dismissed an attorney's contract and quasi-contract claims against an insurer, holding that the attorney was not in privity with the insurer. Other courts have followed suit, emphasizing that insurer communications in the claims-handling context cannot be transmuted into independent contracts with counsel. *See Old Republic Ins. Co. v. Sidley & Austin*, 702 F. Supp. 207, 211 (N.D. Ill. 1988); *Brooks*, 213 F. Supp. 3d at 920-28. Lambert's claim here fails for the same reason.

8

Seemingly facing this reality, Lambert relies on a broader theory: that the five-layer D&O insurance tower was a "continuous contract" and that NUFIC "took over" RSUI's alleged obligations. *See* Am. Compl. (ECF No. 28) at ¶¶ 12, 123–24. The record does not support this theory.  As an initial matter, Lambert's own allegations and the record evidence demonstrate that RSUI never entered into a stand-alone contract with Lambert. RSUI's August 3, 2020 letter to the insured conditioned its approval of Lambert's retention on compliance with RSUI Billing Guidelines and pre-approval of any staffing changes (SMF ¶¶ 5-8). Lambert's own memoranda, sent to RSUI's counsel on August 3, 2020, acknowledged that his staffing and strategy requests were "pursuant to this engagement" and "addressing the RSUI Billing and Approval Guidelines Relating to Legal Staff Approvals" (*Id.*)  Those documents show insurer oversight of costs under the Policy, not a bilateral contract between RSUI and Lambert.

Even if Lambert could show RSUI somehow entered into a contract with him, the existence of such a contract does not somehow create a contract between Lambert and NUFIC.  In *Galanter*, this Court and the Eleventh Circuit rejected an effort to bind an excess carrier to a contract entered into by a carrier that was lower in the insurance tower.  In that case, National Union issued the primary policy in an insurance tower, along with the top excess layer.  As set forth above, as part of the retention of the attorney in conjunction with the primary layer of insurance, National Union, the individual insured's defense counsel, and the insured entered into a separate contract.  The attorney argued that the contract entered into as part of the initial retention under the primary policy should also apply to the arrangement between the attorney and the top layer excess carrier.  The Eleventh Circuit rejected this argument, finding that whatever agreement existed applied only to the terms of that agreement with the primary carrier, and did not somehow carry forward to apply

9

to any excess layers of insurance. *Id.* at 753 (attorney "was only entitled to payment pursuant to the letter agreement, which does not make reference to the excess policy or its limits").

Moreover, binding NUFIC to any contract that had been entered into between Lambert and RSUI would require a novation or express assumption. Florida law is clear that a novation requires proof that the new party agreed to cancel the original obligation and substitute a new one. *Thompson v. Jared Kane Co., Inc.*, 872 So. 2d 356, 361 (Fla. 2d DCA 2004). Without mutual assent to extinguish the old obligation and create a new one, there is no novation. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008). Lambert offers no evidence that NUFIC agreed to assume any RSUI obligations to Lambert. To the contrary, NUFIC advanced defense costs only upon the insured's authorization, told Lambert expressly that it was "not in privity" with him, and made clear that unpaid vendors "would seemingly have a claim against Mr. Kontilai", not NUFIC (SMF ¶ 14). That is not a novation or assumption.

Florida courts have long cautioned that they will not rewrite contracts to impose duties that the parties never undertook. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Co.*, 711 So. 2d 1135, 1138–40 (Fla. 1998). Lambert's "continuous contract" theory asks this Court to do just that—to treat routine insurer claims-handling as an independent contractual obligation binding every insurer in the tower to every attorney approved by a predecessor. Florida law forecloses such a result.

### C. Even if a separate contract existed or if Lambert could sue under the policy itself, the undisputed record shows no breach and no damages

Even if Lambert were able to overcome the barriers set forth above, Lambert still have no cause of action because there has been no breach of any such separate contract or the policy itself and no damages to Lambert.

### 1.      The policy is exhausted

Whether Lambert is trying to sue based upon a breach of the insurance policy as a third-party beneficiary or based upon some type of separate, direct contract between Lambert and NUFIC, either theory fails because there are no more policy proceeds available to pay for Lambert's two invoices.  The NUFIC Policy has a limit of $5 million, including defense costs, and the $5 million has already been expended.  *See* SMF at ¶ 11.  Where a policy's limits have been exhausted, a carrier cannot be found to have breached the contract by not paying additional monies over those limits to continue to provide a defense to its insured.  *See Contreras v. U.S. Sec. Ins. Co.*, 927 So. 2d 16, 21 (Fla. 4th DCA 2006) ("Under the terms of its policy, had U.S. Security paid out its limits, its duty to settle or defend would have ceased"); *Underwriters Guar. Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 578 So. 2d 34, 35 (Fla. 4th DCA 1991) (carrier "was not obligated by its contract to continue defending the additional insured after payment of its policy limits").  Accordingly, because there are no more policy funds available to pay for Lambert's invoices, NUFIC did not breach the policy or any alleged contract between Lambert and NUFIC.

### 2.      NUFIC did not breach the policy

Separate and apart from the fact that there are no more policy proceeds to be paid, NUFIC has not breached any contract – the policy or any alleged separate contract between Lambert and NUFIC.  Lambert's breach of contact theory is based upon NUFIC's non-payment of the two invoices referenced in the complaint – Invoices 128 and 129.  The correspondence and activities surrounding Invoices 128 and 129 show NUFIC doing exactly what it was supposed to do as the policy limits came close to exhaustion -- in an effort to protect the insured's interests in the limited amount of remaining funds, NUFIC requested that the insured provide his review of the submitted invoices and his preferences as to which invoices to pay and not pay.  When Feldman first signaled

11

approval of Invoice 128 and then, one day later, instructed NUFIC not to process it pending MK's review, NUFIC appropriately paused, requested clarification, and deferred payment until MK decided (SMF ¶¶ 19-24). On December 12, 2024, Feldman confirmed that MK had not approved Invoice 128 and had approved other counsel invoices instead to be paid (SMF ¶¶ 22-23), and NUFIC reminded Lambert that there was no privity between Lambert and NUFIC (SMF ¶22). NUFIC reiterated that it could not issue payment on Invoice 128 without express authorization from its insured and that, given insufficient proceeds, allocation preferences belonged to MK (SMF ¶ 17).  As Feldman confirmed in his deposition, he never received MK's direction for NUFIC to pay Lambert's invoices.  *See* ECF No. 50 (Feldman Deposition) at pp. 21-22.

The NUFIC policy is not one with unlimited defense costs funding available.  While Lambert's two invoices were not paid, the same situation applies to many other invoices submitted for the insured's defense.  NUFIC did not breach any policy; it simply paid out funds that were covered under the policy giving deference to the insured's wishes, until such time that the policy was fully exhausted.

In short, Lambert cannot establish contract formation with NUFIC, beneficiary standing, or successor assumption. And even assuming a contract, the insured-directed, limits-constrained advancement reflected in the undisputed facts negates any claim of breach, causation, and/or damages. Accordingly, NUFIC is entitled to summary judgment on the breach-of-contract count (Count I).

### III.    PLAINTIFF'S CLAIM FOR BREACH OF IMPLIED CONTRACT FAILS AS A MATTER OF LAW

In Count II, Lambert attempts to set forth a cause of action for breach of implied contract. As with the breach of express contract, this claim also fails.  As an initial matter, as set forth in

12

83347400;1

*Marx*, an attorney may not invoke implied contract as a basis to seek recovery from a client's insurance carrier.  *See* 480 So. 2d at 179.  This is precisely what Lambert is attempting to do here, and it is precisely what *Marx* and the other cases referenced herein prohibit Lambert from doing.

In addition, as a general matter, Florida law requires contractual privity for contract claims, whether express or implied. *Maxwell v. Southern Am. Fire Ins. Co.*, 235 So. 2d 768, 771 (Fla. 3d DCA 1970). There is no privity here. NUFIC interacted with Lambert solely because of MK's policy. Every communication made clear that authority rested with MK, through Feldman, and that NUFIC's role was to pay defense costs for MK's benefit.

The undisputed record underscores this. Throughout the claim, NUFIC advised Lambert that it was not in privity with him, that MK, and not NUFIC, had retained Lambert as his lawyer, and that MK, through Feldman, would need to provide input into approval to pay invoices and to allocate the dwindling policy limits. (SMF ¶¶ 13, 14, 17-24). These communications eliminate any possibility of an implied contract between Lambert and NUFIC.

Florida courts have rejected implied contract claims against insurers in similar circumstances. In *Security Mut. Cas. Co. v. Pacura*, 402 So. 2d 1266, 1267 (Fla. 3d DCA 1981), the court reversed judgment for a third party, holding that only when "the provisions of the contract clearly show an intention primarily and directly to benefit the individual bringing suit" may a third party recover. Lambert here cannot make that showing. The Policy was for MK's benefit, and Lambert was expressly told that NUFIC had no privity with them. Likewise, in *GEICO Gen. Ins. Co. v. Lepine*, 173 So. 3d 1142, 1145 (Fla. 2d DCA 2015), the court held that an insurer's pre-suit dealings with a third party could not create obligations independent of the insurance contract. The same principle applies here.

83347400;1

This District has applied those principles in granting summary judgment where plaintiffs lacked privity or assignment. In *MSPA Claims 1, LLC v. Covington Specialty Ins. Co*., 548 F. Supp. 3d 1269, 1275 (S.D. Fla. 2021), *aff'd sub nom. MSPA Claims 1, LLC v. United Auto. Ins. Co*., 60 F.4th 1314 (11th Cir. 2023), the court held that MSPA "failed to present any evidence or testimony that either Plaintiff or its assignor was a party or third-party beneficiary of Covington's insurance policy, [or] that Plaintiff obtained an assignment from any party to Covington's policy of insurance." The same flaw dooms Lambert's claim: there is no agreement—express or implied—under which NUFIC undertook any direct payment obligation to Lambert.

## IV.    LAMBERT'S PROMISSORY ESTOPPEL CLAIM FAILS AS A MATTER OF LAW

Lambert's promissory estoppel theory fails as a matter of law because Lambert cannot identify any clear and definite promise by Defendants to pay his invoices. Florida law requires "a promise which the promisor should reasonably expect to induce action or forbearance" and "clear and convincing" proof of that promise. *W.R. Grace & Co. v. Geodata Servs., Inc*., 547 So. 2d 919, 924–25 (Fla. 1989). Courts in this District and the Eleventh Circuit have consistently rejected promissory estoppel claims in the insurance payment context where the alleged promise was indefinite, conditional, or administrative.

The record here underscores why.  Lambert was asked during his deposition to identify what promise(s) was/were made to him upon which he was basing his promissory estoppel claim. In his initial response he referred only to his communications with RSUI when Lambert was initially retained by the insured and the general processing of invoices by the prior carrier. *See* ECF No. 48 (Lambert Deposition) at 117-19.  When pressed for more specifics with respect to any alleged promises made to him by Curley, he referred only to the alleged promise "to maintain the

14

83347400;1

obligations of the insurance carrier," and referred to certain correspondence between himself and Curley. *Id.* at 121-22.

This latter testimony appears to correlate to Lambert's allegations in the operative complaint, which rests on correspondence about invoice processing and ACH enrollment. In late 2024, Curley suggested that Lambert sign up for ACH payments, to avoid the need for paper checks to be mailed to him. On October 27, 2024, Lambert e-mailed Curley that he was sending in a completed ACH form. On November 25 and 26, Lambert sent in the ACH form, which AIG uploaded to its system on or about December 3, and confirmed with Lambert that he was set up in AIG's payment system to receive ACH payments. But NUFIC's request for Lambert to enroll in ACH was not a promise by NUFIC to pay Lambert's invoices. At most, it was an administrative step to facilitate payments ***if*** authorized. The e-mail communications from Curley said National Union "***can*** issue an ACH payment" once the upload was complete. SMF at ¶ 19. That phrasing is quintessentially indefinite. Saying the insurer *can* issue a payment is not a promise that it *will*. No reasonable person, never mind a reasonable attorney, could mistake the difference.[3]

The Eleventh Circuit has squarely held that promissory estoppel requires more. In *Vencor Hospitals v. Blue Cross Blue Shield*, 284 F.3d 1174, 1185–86 (11th Cir. 2002), the court affirmed summary judgment for the insurer "for the reasons stated by the district court," including that the plaintiff offered "no evidence that [the insurer] made any sort of promise as to the amounts that it would pay" and that "promissory estoppel does not apply if the terms of the promise are indefinite." *Id*. (internal quotation marks omitted). The same flaw is found in Lambert's claim.

---

[3] In its order on Defendants' motion to dismiss the original complaint, the Court noted that "the promise the Plaintiffs identify - that Defendants were 'about to' pay the two outstanding invoices - is sufficiently definite to survive a motion to dismiss." In contrast, the actual evidence in this case is far different – the ACH-related communications that Lambert alleged in his complaint constituted a promise that NUFIC was "about to pay" in fact make no such promise.

Courts in this District have applied the same principle. In *Columna, Inc. v. Aetna Health, Inc.*, 2019 WL 4345675, at *5 (S.D. Fla. 2019), and *Vanguard Plastic Surgery PLLC v. Cigna Health & Life Ins. Co.*, 2024 WL 181552 (S.D. Fla. 2024), courts dismissed promissory estoppel claims based on pre-approvals and pre-authorizations, holding that such communications do not constitute definite promises of payment. Those rulings are instructive: Curley's statements about ACH enrollment and invoice processing were even more tentative than the pre-approvals in *Vanguard* and *Columna*.

Nor can Lambert show reasonable reliance. On December 12, 2024, Curley reminded Lambert that: "NUFIC is not in privity with you," and confirmed that MK had not authorized payment of Invoice 128. (SMF ¶¶ 22).  Lambert was repeatedly advised that invoices would not be processed without MK's approval and that allocation among multiple vendors was necessary as policy limits were running out. (SMF ¶¶ 13, 14, 17-24). Against that backdrop, reliance on ACH enrollment as a promise of payment was not just unreasonable—it was implausible.  Furthermore, as per Lambert's own testimony, his reason for continuing to represent MK was ***not*** because of the ACH e-mail correspondence, but rather was because Lambert decided that he had a professional responsibility to continue to represent MK until the cases against him were finished.  SMF at ¶ 25.

Moreover, the promissory estoppel claim as against Curley (the only cause of action against him) fails because any promise that Curley may have made was not a promise that Curley made on behalf of himself.  Lambert testified that he clearly understood that whatever promise he believed was being made to him, it was not on behalf of Curley individually.  In other words, if Curley was somehow promising (which he clearly was not) that Lambert would be paid for Lambert's legal services to his client, that promise was on behalf of NUFIC with NUFIC making any such payment, not Curley individually.  *See* ECF No. 48 (Lambert Deposition) at 123.

At bottom, Lambert is trying to recast ordinary invoice processing and insurer administration into a binding promise to pay him directly. But the law does not permit estoppel on the basis of vague, conditional, or administrative statements. Because no clear and definite promise existed, and because Lambert's reliance theory is foreclosed by binding precedent, Count IV fails as a matter of law.

## V.   LAMBERT'S CLAIM FOR QUANTUM MERUIT IN COUNT V FAILS AS A MATTER OF LAW

Lambert's fallback plea for *quantum meruit* fares no better.  Under Florida law, a plaintiff cannot recover in quasi-contract unless it conferred a direct benefit on the defendant, the defendant knowingly accepted it, and equity requires compensation. *See, e.g., Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386–88 (Fla. 4th DCA 1997). Lambert's problem is that his services were provided to MK, not to National Union. Whatever incidental benefit National Union may have derived from the defense of its insured is not enough.

Florida courts have been emphatic on this point. In *Marx*, 480 So. 2d at 177-78, the insured's attorney obtained a judgment in quantum meruit against the insurer after the client failed to pay. The Third District reversed, holding there was "utterly no cognizable legal basis" for recovery against the carrier. *Id*. at 178. The benefit of the legal services ran to the insured; any derivative benefit to the insurer was too attenuated to support quasi-contract. *Id*. at 179 ("No court has ever held—indeed the proposition seems never before even to have been advanced—that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees. We shall not be the first."). That principle controls here.

17

83347400;1

Federal courts have applied the same rule across different contexts. The Eleventh Circuit in *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333 (11th Cir. 2015), rejected quantum-meruit-style claims where the supposed duty did not arise independently of the underlying insurance contract—the provider's claims were expressly tethered to the plan and "no other legal duty" supported them. *See id.* (holding that the quasi-contract counts incorporated plan-based allegations and therefore could not proceed apart from the plan's obligations). And this District recently reaffirmed the same point in *Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*, 733 F. Supp. 3d 1278 (S.D. Fla. 2024), holding that providers confer benefits on patients, not insurers, and dismissing quantum meruit and unjust enrichment claims with prejudice. *Id.* (collecting S.D. Fla. cases and holding that "healthcare providers … confer a benefit on the patient, not on the patient's insurer").

The undisputed record underscores the point. NUFIC paid defense costs when they were covered and when MK authorized them and did not pay them when MK requested that his limited insurance funds be used for other invoices. NUFIC told Lambert directly that he was "not in privity" with them and that any unpaid counsel would have claims only against MK. On those facts, there is no direct benefit to National Union, no acceptance, and no inequity that warrants shifting MK's obligations to the insurer. Lambert's *quantum meruit* claim therefore fails as a matter of law.

**CONCLUSION**

The record leaves no room for doubt. Lambert cannot show a contract with National Union, an implied agreement, a clear and definite promise, or a direct benefit conferred on NUFIC. Each claim—Count I (Breach of Contract), Count II (Breach of Implied Contract), Count IV (Promissory Estoppel), and Count V (Quantum Meruit)—fails as a matter of law. Because the undisputed facts foreclose liability on every theory, this Court should enter summary judgment in full for Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and Gavin Curley, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

**AKERMAN LLP**
*Attorneys for Defendants, NUFIC and Curley*
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

By:  s/ Gary J. Guzzi
GARY J. GUZZI
Florida Bar No. 159440
Primary E-mail: gary.guzzi@akerman.com
Secondary E-mail: maria.revoredo@akerman.com
NIKOLAS L. VOLOSIN
Florida Bar No. 1031169
Primary e-mail: nikolas.volosin@akerman.com
Secondary e-mail: dorothy.matheis@akerman.com

83347400;1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF

this 30th day of September, 2025 on:

George Lambert, Esq.
Attorney for The Lambert Law Firm and pro se
THE LAMBERT LAW FIRM
421 Poinciana Drive, #1422
Sunny Isles Beach, FL 33160
Primary Email: office.law.323@gmail.com

s/ Gary J. Guzzi
Attorney

83347400;1