**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:25-cv-20340-EA**

THE LAMBERT LAW FIRM P.C., and
GEORGE LAMBERT,

      Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, Pa., and
GAVIN CURLEY,

      Defendants.

_____/

**DEFENDANT'S TRIAL BRIEF**

Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or "NUFIC") hereby submits this Trial Brief to provide the Court with background information and to address certain issues that may arise during the course of the trial in this matter.

**BACKGROUND**

This case is not about insurance coverage. It is about unpaid legal bills that Plaintiffs are trying to collect from National Union even though Plaintiffs have no right to do so.

Plaintiff George Lambert ("Lambert") is an attorney who represented Mykalai Kontilai ("MK") in criminal and civil matters. When two of Lambert's invoices went unpaid by his own client, Lambert sued not the client—but the client's excess insurer and the insurer's outside counsel.[1] Florida law does not permit that end-run. The relevant facts are below.

---

[1] Plaintiffs have voluntarily dismissed Gavin Curley (NUFIC's outside counsel) with prejudice and therefore NUFIC is the only remaining defendant.

84926497;1

### A.  The Policy and Insurance Tower

NUFIC issued an Excess and Difference in Conditions Side-A Directors and Officers policy, Policy No. 01-232-99-82, with a policy period of February 24, 2017 through February 24, 2019 (the "NUFIC Policy"). The named entity is Collector's Coffee, Inc. The policy provides Side-A coverage only—meaning it covers certain individuals, not the entity, and only up to the policy's stated limits. The NUFIC Policy sat atop a $25 million insurance tower: QBE (primary): $5 million; Westchester: $5 million excess of $5 million; RSUI: $5 million excess of $10 million; RLI: $5 million excess of $15 million; NUFIC: $5 million excess of $20 million.

The NUFIC Policy generally follows form to the QBE policy with respect to defense provisions. Defense costs erode limits. Once the $5 million limit is exhausted, no further defense costs are payable.

### B.  Lambert's Retention, and NUFIC's Non-Involvement

Lambert began representing MK in August 2020—years before NUFIC's policy was triggered—while RSUI's layer was active. Lambert's engagement letters, staffing requests, billing approvals, and strategy memoranda were all exchanged with RSUI and RSUI's counsel. NUFIC was not copied, consulted, or involved.

Those communications show exactly what they appear to be: insurer oversight of defense costs under an insurance policy. They do not reflect a bilateral contract between Lambert and any insurer, let alone NUFIC.

### C.  NUFIC's Role: Claims Administration, Not Retention of Counsel

NUFIC's first involvement occurred in late 2022, when Lambert sought payment of an invoice that had not been fully paid by a prior carrier in the tower. By then, Lambert had already

2

84926497;1

represented MK for approximately two years and the $20,000,000 beneath the NUFIC policy had been fully exhausted in payment of defense costs in connection with the underlying lawsuits.

From that point forward, NUFIC administered its policy in the ordinary course. It communicated primarily with MK's insurance coverage counsel, David Feldman, Esq. ("Feldman"), who served as the point of contact for MK's insurance decisions, particularly because MK was a fugitive from justice living abroad until he was apprehended, extradited back to the United States, and incarcerated.[2] Feldman testified that he had authority to convey MK's directions to NUFIC and that his communications reflected MK's wishes—not his own.

NUFIC repeatedly made its role clear: MK retained Lambert; NUFIC did not. NUFIC was not a party to any retention agreements and was tasked with paying legal fees consistent with its obligations under the NUFIC policy. When disputes arose, NUFIC advised that any unpaid counsel would seemingly have a claim against MK.

### D. NUFIC Paid its Limits—More Than $2 Million to Lambert

Once triggered, NUFIC paid covered defense costs as required. It ultimately paid the entire $5 million policy limit. Of that amount, over $2 million was paid to Lambert.

From the inception of NUFIC's involvement through July 2024, every Lambert invoice submitted to NUFIC was paid.

### E. The Two Invoices At Issue and the Insured's Allocation Decision

In September 2024, Lambert submitted Invoice No. 128 for $105,191.34 (August 2024 services). In October 2024, Lambert submitted Invoice No. 129 for $94,325.98 (September 2024 services). These are the only Lambert invoices NUFIC received before suit that were not paid.

---

[2] In 2023, MK was apprehended in Europe and extradited back to the United States to face criminal charges in Colorado and Nevada. In September 2024, MK pled guilty to wire fraud and is currently serving a 51-month prison sentence in Nevada.

3

By that time, policy limits were nearly exhausted. On October 30, 2024, Curley advised Feldman that remaining proceeds were limited and that invoices from multiple vendors exceeded available limits. MK's input was requested as to allocation.

On November 25, 2024, Feldman initially indicated that MK had approved Invoice 128. The next day, Feldman advised that MK had revoked approval pending review of certain work. Curley appropriately paused payment and sought clarification.

On December 12, 2024, Feldman confirmed that MK had not approved Invoice 128 and had instead approved payment of other counsel's invoices. Feldman confirmed he conveyed this directly to Lambert. NUFIC followed MK's requests and paid other invoices until the policy was exhausted in May 2025.

### F.  No Promise—and Lambert's Own Choice To Keep Working

Lambert continued representing MK despite non-payment of Invoices 128 and 129. He testified that he did so based on his own professional judgment; not because of any promise by NUFIC or Curley.

When asked to identify any promise supporting promissory estoppel, Lambert could point only to generalized references to "complying with the policy" and administrative ACH-setup emails—communications that expressly used conditional language and conveyed no commitment to pay.

### APPLICABLE LEGAL PRINCIPLES

### I.    An Attorney Lacks Standing to Sue A Client's Insurer for Unpaid Legal Fees

Florida law squarely rejects the theory underlying this case. In *Continental Casualty Co. v. Marx*, the Third District reversed a judgment awarding an insured's attorney fees from a D&O insurer, holding: "There is utterly no cognizable legal basis upon which [the attorney's] recovery

4

against [the insurer] can be sustained." 480 So. 2d 177, 178 (Fla. 3d DCA 1985). The court emphasized that the attorney was, at most, an incidental beneficiary. Id. at 178–79. ("[The attorney] derived only the most attenuated 'incidental or consequential benefit' from enforcement of the policy and therefore may not maintain an action upon it.").

And the court made the point unmistakably clear that "[n]o court has ever held—indeed the proposition seems never before even to have been advanced—that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees. We shall not be the first." *Id*. at 179. Courts across jurisdictions have followed *Marx* in analogous contexts.

## II.    Plaintiffs' Contract Claims Require Privity or Intended Beneficiary Status

A non-party may sue on a contract only if the contracting parties "clearly express an intent to primarily and directly benefit the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005). Incidental benefits do not suffice. Nor may obligations be imposed on an excess insurer absent express assumption or novation. A novation requires "mutual assent to extinguish the original obligation and substitute a new one." *Thompson v. Jared Kane Co., Inc*., 872 So. 2d 356, 361 (Fla. 2d DCA 2004).

## III.    Promissory Estoppel Requires a Clear and Definite Promise

Florida requires a "clear and definite" promise for promissory estoppel. *W.R. Grace & Co. v. Geodata Servs., Inc*., 547 So. 2d 919, 924–25 (Fla. 1989). Indefinite, conditional, or administrative communications do not qualify.

5

## IV.     Quantum Meruit Requires a Direct Benefit to the Defendant

Quantum meruit lies only where the plaintiff conferred a direct benefit on the defendant. Legal services rendered to an insured benefit the insured—not the insurer. *Marx*, 480 So. 2d at 179.

### APPLICATION OF LEGAL PRINCIPLES

## I.     Lambert's Claims Fail Because an Attorney May Not Sue a Client's Insurer for Unpaid Invoices.

This case is controlled by *Continental Casualty Co. v. Marx*, 480 So. 2d 177 (Fla. 3d DCA 1985). There, defense counsel sued a D&O insurer directly after the insured failed to pay legal fees. The Third District reversed judgment for the attorney, holding there was "utterly no cognizable legal basis" for recovery against the insurer. *Id*. at 178.

The court explained that although the policy required the insurer to pay defense costs on behalf of the insured, the attorney was not a party to the policy and derived, at most, an incidental benefit from its enforcement. *Id*. at 178–79. The court rejected outright the theory Lambert advances here, stating: "No court has ever held—indeed the proposition seems never before even to have been advanced—that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees. We shall not be the first." *Id*. at 178–79.

Courts applying Marx have consistently refused to allow attorneys to recast fee disputes with clients as direct claims against insurers. *See, e.g. Continental Cas. Co. v. Marx*, 480 So. 2d 177 (Fla. 3d DCA 1985); *Brooks Cushman v. Continental Cas. Co.*, 213 F. Supp. 3d 917 (E.D. Mich. 2016); *Old Republic Ins. Co. v. Sidley & Austin,* 702 F. Supp. 207, 211 (N.D. Ill. 1988); *Simmons v. USF&G Co.,* 405 A.2d 675 (Conn. Sup. Ct., App. Session 1978); *Kelly, Walker & Liles v. McFarling,* 509 S.W.2d 659 (Tex. Ct. App. 1974).

6

Lambert seeks precisely what *Marx* forbids: shifting his client's obligation to pay legal fees onto the insurer. For that reason alone, each claim fails as a matter of law.

## II.    Count I (Breach of Contract) Fails as a Matter of Law

Lambert cannot establish the existence or breach of any express contract with NUFIC.

### A.    Lambert Is Not a Party to the Policy and Is Not an Intended Third-Party Beneficiary

Under Florida law, a non-party may sue on a contract only if the contracting parties clearly intended, at the time of formation, to directly and primarily benefit that non-party. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005); *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006). In *Marx*, the court expressly rejected the argument that defense counsel is an intended beneficiary of a D&O policy's defense-cost provisions. 480 So. 2d at 178–79.

Lambert identifies no policy language naming him, no contemporaneous expression of intent to benefit him, and no evidence capable of overcoming Marx's holding.

### B.    No Separate Express Contract Exists Between Lambert and NUFIC

Florida law requires offer, acceptance, consideration, and sufficiently definite essential terms to form a contract. *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Here, NUFIC's communications concerned invoice submission, insured approval, and allocation of available policy limits. Those communications reflected National Union's administration of its policy for MK's benefit—not the formation of a bilateral contract with Lambert.

7

**C.     National Union Did Not Assume Any RSUI Obligations; No Novation Occurred**

Even if Lambert could establish a contract with RSUI (which the record does not support), National Union would not be bound absent a novation. A novation requires proof that the new party agreed to extinguish the prior obligation and substitute a new one. *Thompson v. Jared Kane Co., Inc.*, 872 So. 2d 356, 361 (Fla. 2d DCA 2004); *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (explaining that novation requires mutual assent to substitute obligations).

The record reflects the opposite. National Union repeatedly advised Lambert that it was not in privity with him and that payment authority rested with MK.

**D.     The "Continuous Contract / Tower Takeover" Theory Is Legally Foreclosed**

Lambert's theory that the insurance tower operated as a single continuous contract asks the Court to impose obligations National Union never undertook. Florida courts do not rewrite contracts to create duties the parties never agreed to. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Co.*, 711 So. 2d 1135, 1138–40 (Fla. 1998) (declining to expand insurance coverage beyond the policy's plain language).

The Eleventh Circuit rejected a similar attempt to extend an attorney–carrier agreement across insurance layers in *Yale Galanter, P.A. v. Johnson*, 293 F. App'x 750, 753 (11th Cir. 2008) (holding that an attorney's fee agreement with one carrier did not bind other layers of insurance). This Court should decline Lambert's invitation to rewrite the parties' agreements and instead enforce the policies as written.

8

**E.      No Breach Occurred Because Limits Were Exhausted and Allocations Were Insured-Directed**

Even if a contract existed, there was no breach. Under Florida law, once policy limits are exhausted, the obligation to fund defense costs ends. *See Contreras v. U.S. Sec. Ins. Co.*, 927 So. 2d 16, 21 (Fla. 4th DCA 2006) ("Under the terms of its policy, had U.S. Security paid out its limits, its duty to settle or defend would have ceased"); *Underwriters Guar. Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 578 So. 2d 34, 35 (Fla. 4th DCA 1991) (carrier "was not obligated by its contract to continue defending the additional insured after payment of its policy limits").

The undisputed record shows National Union advanced defense costs until limits were exhausted and allocated remaining funds at MK's request through coverage counsel. That conduct complies with the policy and cannot constitute a breach.

**III.     Count II (Implied Contract) Fails as a Matter of Law**

Implied contract requires privity. *Maxwell v. S. Am. Fire Ins. Co.*, 235 So. 2d 768, 771 (Fla. 3d DCA 1970) (holding that contractual privity is required for contract claims). In *Marx*, the court rejected an implied-contract theory by insureds' counsel, holding that where the attorney "was hired by and represented only the [insureds]," no agreement with the carrier existed. 480 So. 2d at 179.

Here, National Union consistently advised Lambert that MK—not National Union—retained him and controlled invoice approval. Those facts foreclose any implied contract as a matter of law.

## IV.    Count IV (Promissory Estoppel) Fails as a Matter of Law

To bring a claim for promissory estoppel, Florida law requires "a promise which the promisor should reasonably expect to induce action or forbearance" and "clear and convincing" proof of that promise. *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924–25 (Fla. 1989). Conditional or administrative communications are insufficient. Vencor Hosps., Inc. v. Blue Cross & Blue Shield, 284 F.3d 1174, 1185–86 (11th Cir. 2002) (affirming rejection of promissory estoppel where insurer made no definite promise of payment).

The ACH-related communications here were administrative and contingent on insured approval and available limits. They were not promises. Nor was reliance reasonable, as Lambert testified he continued representing MK out of professional responsibility, not because of anything Defendants said. That was Lambert's professional choice—not a legal obligation Defendants assumed.

## V.    Count V (Quantum Meruit) Fails as a Matter of Law

Quantum meruit requires a direct benefit conferred on the defendant. *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386–88 (Fla. 4th DCA 1997) (describing elements required to establish quantum meruit). In *Marx*, the court rejected quantum meruit in this exact setting, holding there was "utterly no cognizable legal basis" to shift the insured's fee obligation to the insurer. 480 So. 2d at 178.

Federal courts applying Florida law have reached the same conclusion where services benefitted the insured rather than the insurer. *Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*, 733 F. Supp. 3d 1278, 1286 (S.D. Fla. 2024) (collecting S.D. Fla. cases and holding that "healthcare providers … confer a benefit on the patient, not on the patient's insurer"). Because any

10

benefit flowed exclusively to the insured, quantum meruit cannot supply a basis for recovery against National Union.

## ISSUES THAT MAY ARISE DURING TRIAL

### A. Plaintiff's Invoices That Were Never Produced During Discovery

As explained above, Plaintiff's operative complaint references only two invoices that NUFIC did not pay. As set forth in more detail in Defendant's two pending motions (ECF No. 92 and ECF No. 99), Plaintiffs did not produce (or apparently even generate) any invoices for any later alleged legal services until 3 ½ months after discovery had closed and three months after summary judgment motions had been filed. NUFIC never had an opportunity to review and adjust such invoices as part of a claim process, nor did NUFIC have any opportunity to analyze the invoices during the discovery process, examine Mr. Lambert under oath about those invoices during his deposition, retain an expert witness to opine as to the reasonableness or necessity of the legal services, or otherwise challenge the invoices. Accordingly, Plaintiffs cannot present any evidence (oral or documentary) regarding any alleged legal services other than the two invoices at issue.

### B. Payments Made to Other Service Providers

During the course of discovery, Plaintiff attempted to question the propriety of payments that NUFIC had made to several other attorneys and other service providers retained by MK. Defendant objected on the basis that Plaintiffs had no standing to raise such an issue, and because it was not relevant to the issues in this case. Plaintiffs are not parties to the insurance policy, and any issues as to whether certain payments under the policy were proper is an issue that could be raised only by the insured (who is a party to the insurance policy) and not by Plaintiffs (who are

11

not parties). Defendants also objected to Plaintiffs inquiring as to the process by which National Union reached its decision as to whether or not to pay a particular invoice for services provided to the insured. This issue raised a discovery dispute which resulted in a hearing with Magistrate Judge Reid. Judge Reid agreed with Defendant's position that Plaintiffs were not entitled to seek discovery into such topics because such an issue was not relevant to the issues in this case, and was something that only the insured could potentially raise because he, unlike Plaintiffs, is a party to the policy. The Magistrate Judge's written order was entered as Docket 45.

In the event that Plaintiff should seek to inject such issues into the trial of this case, the same result should occur as with the discovery hearing. Plaintiffs are not parties to the insurance policies. At most, they are incidental beneficiaries of the policy in the sense that they might receive payments from National Union for the services that they provide to the insured, MK, and as such they have no right to dispute or question payments that NUFIC made to other service providers. For the same reason, Plaintiffs have no right to question National Union as to its decision-making process with respect to making any claim payments under the policy. As Judge Reid pointed out in her order, the only relevant facts would be whether a particular payment was made, the details of that payment, the internal mechanisms for actually issuing a payment, and confirmation that the policy was in fact exhausted. Accordingly, any questions that Plaintiffs may ask or testimony that Plaintiffs attempt to give cannot go beyond these limited bounds.

84926497;1

Respectfully submitted,

**AKERMAN LLP**
*Attorneys for Defendants, NUFIC and Curley*
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

By:  s/ Gary J. Guzzi
GARY J. GUZZI
Florida Bar No. 159440
Primary E-mail: gary.guzzi@akerman.com
Secondary E-mail: maria.revoredo@akerman.com
EDGARD K. CESPEDES
Florida Bar No. 123516
Primary E-mail: Edgard.Cespedes@akerman.com
Secondary E-mail: kim.stathopulos@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF

this 26th day of March, 2026 on:

George Lambert, Esq.
Attorney for The Lambert Law Firm and pro se
THE LAMBERT LAW FIRM
421 Poinciana Drive, #1422
Sunny Isles Beach, FL 33160
Primary Email: office.law.323@gmail.com

Emily M. Walters, Esq.
David Aronberg, Esq.
DAVE ARONBERG LAW, P.A.
Co-Counsel for Plaintiff George Lambert
515 N. Flagler Drive, Suite 402
West Palm Beach, FL 33401
Primary Email:
   emily@davearonberglaw.com
Secondary Email:
   jpratt@davearonberglaw.com
Primary Email:
   dave@davearonberglaw.com
Secondary Email:
   jpratt@davearonberglaw.com;
   lhebda@davearonberglaw.com; and
   service@davearonberglaw.com

s/ Gary J. Guzzi
Attorney

13

84926497;1